```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                     )
SECURITIES AND EXCHANGE              )
COMMISSION,                          )
                                     )
         Plaintiff,                  )
                                     )
         v.                          )     C.A. No. 15-231 S
                                     )
ANTHONY ANDRADE, et al.,             )
                                     )
         Defendants.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court are Motions to Dismiss filed by Defendants Kenneth Rampino and Anthony Andrade (ECF Nos. 13 and 15, respectively). The Securities and Exchange Commission ("SEC") filed oppositions (ECF Nos. 18 and 19), and Rampino and Andrade filed replies (ECF Nos. 23 and 24). After careful consideration, Defendants' motions are DENIED for the reasons set forth below.

I. Background

The SEC alleges that Defendant Andrade, who was on the Board of Directors of Bancorp Rhode Island, Inc. ("Bancorp RI"), committed insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, by tipping several of his friends – Defendant Rampino, Robert Kielbasa, and Fred Goldwyn –

that Bancorp RI was in the process of being acquired.[1] Shortly after speaking with Andrade, Rampino, Kielbasa, and Goldwyn "made large, out-of-character, and spectacularly well-timed purchases of stock in Bancorp RI." (SEC Opp'n to Andrade Mot. to Dismiss 3, ECF No. 19.)

It is hard to imagine a case with better alleged circumstantial evidence of insider trading. Goldwyn and Kielbasa both purchased a large amount of Bancorp RI stock less than half an hour after speaking with Andrade, and Kielbasa apparently told his investment advisor that he had a friend who had suggested that Bancorp RI would be a good investment. (Compl. ¶¶ 56-57, 96-97, ECF No. 1.) Rampino spoke with Andrade on Friday, April 15, 2011, and then proceeded to purchase 1,500 shares of Bancorp RI the following Monday, April 18. (Id. ¶¶ 129-30.) None of the three "tippees" had any legitimate business justification to know about Bancorp RI's merger negotiations. (Id. ¶¶ 45, 84, 123.) Moreover, over the past decade, all three had primarily traded in mutual funds rather than individual company stocks. (Id. ¶¶ 55, 91, 131.) The Bancorp RI acquisition became public on April 20, and the price of Bancorp RI shares increased by 43 percent. (Id. ¶ 36.) Finally, when asked about these trades and phone conversations, all of the

---

[1] Kielbasa and Goldwyn have both reached settlements with the SEC and consented to final judgment against them. (See ECF Nos. 1-2 and 1-4.)

defendants exercised their Fifth Amendment right against self-incrimination.  (Id. ¶¶ 73-81, 112-20, 133-42.)

II. Discussion

In ruling on a motion to dismiss, the Court must "accept the well-pleaded facts as true, viewing factual allegations in the light most favorable to the plaintiff." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

Because insider trading cases are securities fraud claims, the SEC generally must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  However, district courts in the Southern District of New York – in which a high volume of insider trading cases are litigated - have held that these requirements may be relaxed in cases like this one, where facts are "peculiarly within the [defendants'] knowledge." SEC v. Payton, 97 F. Supp. 3d 558, 563 n.3 (S.D.N.Y. 2015); see also SEC v. One or More Unknown Traders in the Secs. of Onyx Pharms., Inc.,

3

No. 13-CV-4645 (JPO), 2014 WL 5026153, at *4 (S.D.N.Y. Sept. 29, 2014) ("Rule 9(b) is therefore relaxed only to the following extent: if a tip took place under circumstances known only to the defendant and the tipper, the plaintiff may plead a belief about the content and the circumstances of the tip, coupled with particular facts supporting that belief."). Andrade argues that the First Circuit applies Rule 9(b) strictly, and thus these Southern District of New York cases are not good law in the First Circuit. (See Andrade Reply 2-3, ECF No. 24.) However, the Court need not reach this issue because, as explained below, even under the stricter Rule 9(b) standard, the SEC has alleged sufficient facts to state a claim against Defendants Rampino and Andrade.

In <u>Dirks v. SEC</u>, the U.S. Supreme Court held that, in order to prove liability for insider trading, the government must show that "the insider personally will benefit, directly or indirectly, from his disclosure." 463 U.S. 646, 662 (1983). The Court made clear that "[a]bsent some personal gain, there has been no breach of duty to stockholders." <u>Id.</u> The Court further noted that:

> There are objective facts and circumstances that often justify such an inference [of personal benefit]. For example, there may be a relationship between the insider and the recipient that suggests a <u>quid pro quo</u> from the latter, or an intention to benefit the particular recipient. <u>The elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend</u>. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient.

4

Id. at 664 (emphasis added). The First Circuit has likewise stated that "[t]he 'benefit' to the tipper need not be 'specific or tangible.' . . . A gift to a friend or relative is sufficient." SEC v. Sargent, 229 F.3d 68, 77 (1st Cir. 2000) (quoting SEC v. Warde, 151 F.3d 42, 48-49 (2d Cir. 1998)); see also SEC v. Rocklage, 470 F.3d 1, 7 n.4 (1st Cir. 2006) ("[T]he mere giving of a gift to a relative or friend is a sufficient personal benefit.").

Relying on the Second Circuit's decision in United States v. Newman, 773 F.3d 438 (2d Cir. 2014), cert. denied, 136 S. Ct. 242 (2015), Defendants argue that the SEC has failed to sufficiently allege that Andrade received a personal benefit and that Rampino knew about that benefit. The court in Newman found that:

> "[P]ersonal benefit is broadly defined to include not only pecuniary gain, but also, inter alia, any reputational benefit that will translate into future earnings and the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend." [United States v. Jiau, 734 F.3d 147, 153 (2d Cir. 2013).] This standard, although permissive, does not suggest that the Government may prove the receipt of a personal benefit by the mere fact of a friendship, particularly of a casual or social nature. If that were true, and the Government was allowed to meet its burden by proving that two individuals were alumni of the same school or attended the same church, the personal benefit requirement would be a nullity. To the extent Dirks suggests that a personal benefit may be inferred from a personal relationship between the tipper and tippee, where the tippee's trades "resemble trading by the insider himself followed by a gift of the profits to the recipient," see 463 U.S. at 664, . . . such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or

5

<mark>similarly valuable nature.</mark>  In other words, as Judge
> Walker noted in <mark>Jiau</mark>, this requires evidence of "a
> relationship between the insider and the recipient that
> suggests a <mark>quid pro quo</mark> from the latter, or an intention
> to benefit the [latter]." <mark>Jiau</mark>, 734 F.3d at 153.

<mark>Newman</mark>, 773 F.3d at 452 (emphasis added).  Thus, Defendants argue, the SEC has alleged no facts showing the requisite "meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," <mark>id.</mark>, between Andrade and his tippees.  The Court is not persuaded.

Although not bound by <mark>Newman</mark>, the Court acknowledges the particular expertise of the Second Circuit in this area.  See <mark>United States v. Salman</mark>, 792 F.3d 1087, 1092 (9th Cir. 2015) ("[W]e would not lightly ignore the most recent ruling of our sister circuit [<mark>Newman</mark>] in an area of law that it has frequently encountered.").  However, <mark>Newman</mark> was, both factually and procedurally, a very different case from this one.

For starters, <mark>Newman</mark> did not involve a motion to dismiss; it was an appeal from a judgment in a criminal trial.  This distinction is significant: at a criminal trial, the government must prove its case beyond a reasonable doubt, while a plaintiff defending against a motion to dismiss must only show that its complaint is plausible on its face.  Thus, even assuming <mark>Newman</mark> applies, the question of whether the government has presented "proof of a meaningfully close personal relationship that

6

generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," Newman, 773 F.3d at 452, must be evaluated in the context of the proper standard for a motion to dismiss.

Furthermore, as the SEC points out in its briefing, Newman "involved tippees several layers of tipping down the chain from the insider who was the source of the confidential information." (SEC Opp'n to Andrade Mot. to Dismiss 15, ECF No. 19.)  By contrast, here, Andrade directly tipped each of the tippees.  Thus, not only was the burden of proof higher, more was required to meet that burden in order to prove that the original tipper – who did not communicate directly with the final tippees – received a benefit.

The Ninth Circuit's recent decision in Salman, 792 F.3d 1087, written by Southern District of New York Judge Rakoff, sitting by designation, cautions against taking Newman too far out of its context.  There, the defendant had been convicted of insider trading based on a series of tips he received from his brother-in-law, Michael Kara, who had in turn received that information from another Kara brother, Maher.  At trial, "the Government presented evidence that Salman knew full well that Maher Kara was the source of the information." Id. at 1089.  Relying on Newman, Salman argued that "evidence of a friendship or familial relationship between tipper and tippee, standing alone, is insufficient to demonstrate that the tipper received a benefit"

7

and there was "no evidence that Maher received any such tangible benefit in exchange for the inside information, or that Salman knew of any such benefit." Id. at 1093. The court found that:

> To the extent Newman can be read to go so far, we decline to follow it. Doing so would require us to depart from the clear holding of Dirks that the element of breach of fiduciary duty is met where an "insider makes a gift of confidential information to a trading relative or friend."
>
> . . . If Salman's theory were accepted and this evidence found to be insufficient, then a corporate insider or other person in possession of confidential and proprietary information would be free to disclose that information to her relatives, and they would be free to trade on it, provided only that she asked for no tangible compensation in return. Proof that the insider disclosed material nonpublic information with the intent to benefit a trading relative or friend is sufficient to establish the breach of fiduciary duty element of insider trading.

Id. at 1093-94 (quoting Dirks, 463 U.S. at 664). Put another way, the evidence showed a relationship close enough that "the tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient." Dirks, 463 U.S. at 664.

However, not every relationship rises to this level, and that seems to be the concern in Newman: something other than "the mere fact of a friendship, particularly of a casual or social nature," Newman, 773 F.3d at 452, is required to support the inference that the tip was intended as "a gift of confidential information to a trading relative or friend." Dirks, 463 U.S. at 664. Yet this does not foreclose the possibility that in some cases –

8

particularly close familial relationships – the fact that the tip was given and traded on is, on its own, enough for an inference of the intention to benefit.  Indeed, the court in Newman specifically states, "[i]n other words . . . this requires evidence of 'a relationship between the insider and the recipient that suggests a <u>quid pro quo</u> from the latter, <u>or an intention to benefit the [latter]</u>.'"  <u>Newman</u>, 773 F.3d at 452 (emphasis added) (quoting <u>Jiau</u>, 734 F.3d at 153).

For example, in <u>Salman</u>, there was a "close fraternal relationship," 792 F.3d at 1090; likewise, in <u>Rocklage</u>, the First Circuit found that "[t]he gift of information Mrs. Rocklage gave <u>her brother</u>" met the benefit standard.  470 F.3d at 7 n.4 (emphasis added).  By contrast, if the relationship is merely "of a casual or social nature," then the government must put forth evidence of "a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."  <u>Newman</u>, 773 F.3d at 452.  This makes sense:  people are unlikely to take the risk of disclosing confidential information to a mere casual acquaintance unless there is something in it for them; however, they might take that risk for a close friend or family member solely with the intention to benefit that person.

That said, the Court need not decide the scope and reach of <u>Newman</u>'s application at this juncture.  Even assuming that the SEC

9

must prove "a potential gain of a pecuniary or similarly valuable nature," id., the Complaint states a plausible claim. With respect to Defendant Rampino in particular, the Court notes that the allegation that "Andrade personally went with one of his property service vendors to Rampino's home to help resolve a septic issue for Rampino" (Compl. ¶ 128, ECF No. 1), makes it highly plausible that Rampino and Andrade have the type of relationship where there was, at a minimum, a give and take of sorts that had the <u>potential</u> for pecuniary gain.[2]

Rampino further argues that "[a]lthough the SEC generally alleges that Mr. Rampino knew that Mr. Andrade was breaching his fiduciary duty (Complaint at ¶ 123), the Complaint does <u>not</u> contain any allegation that Mr. Rampino knew that Mr. Andrade received the requisite personal benefit." (Rampino Mot. to Dismiss 8, ECF No. 13 (emphasis in original).) Yet the exact paragraph of the Complaint that Rampino cites states that "Rampino further <u>knew</u> that Andrade provided him the tip of material, non-public information concerning Bancorp RI's imminent merger as <u>an illicit</u>

---

[2] Regarding Defendants' assertion of their Fifth Amendment rights, Rampino is correct that this allegation <u>standing alone</u> cannot survive a motion to dismiss. (<u>See</u> Rampino Reply 6 n.4, ECF No. 23.) However, the Court may and does consider Defendants' invocation of the Fifth Amendment in conjunction with the rest of the SEC's allegations. <u>See</u> <u>Gannett v. Carp (In re Carp)</u>, 340 F.3d 15, 23 (1st Cir. 2003) ("[T]he trial court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment in a particular civil case.").

10

gift or business opportunity to profit upon." (Compl. ¶ 123, ECF No. 1 (emphasis added).) This paragraph, combined with paragraph 128 concerning Andrade's repair of Rampino's sewer, and the allegation that their relationship was a long term friendship (id. ¶¶ 125, 127), are sufficient to plead that Rampino knew about the benefit to Andrade. (See SEC Opp'n to Rampino Mot. to Dismiss 21, ECF No. 18 ("Rampino was, of course, aware of his 20-year-long friendship and business association with Andrade, as well as the personal benefits and favors he and Andrade had exchanged.").)

Finally, as explained above, these facts are sufficient to satisfy the stricter pleading standard of Rule 9(b). Even under Newman, the SEC does not need to allege any specific tangible benefit; at most, it needs to plead specific facts showing that Defendants' relationship is "meaningfully close" enough to support an inference that there is "at least a potential gain of a pecuniary or similarly valuable nature." Newman, 773 F.3d at 452. The Court finds that the SEC has done so.[3]

---

[3] The Court need not reach the issue of whether it may consider the invoice attached to Defendant Rampino's motion. (See Rampino's Mot. to Dismiss 9-10, ECF No. 13; SEC's Opp'n to Rampino's Mot. to Dismiss 22-24, ECF No. 18.) As the SEC pointed out during oral argument, the Complaint alleges that "Rampino provided advice to Andrade and Andrade's son regarding a problematic real estate issue Andrade's son was having" and "Rampino's law firm has no record of billing Andrade for this professional time." (Compl. ¶ 128, ECF No. 1 (emphasis added).) Thus, even if the Court were to consider this document, it would have no bearing on the allegation that Andrade was not billed for advice that he received concerning his son's real estate issues.

11

III. Conclusion

    For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 13 and 15) are hereby DENIED.


IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
Chief Judge
Date:  January 15, 2016